No. 24-4756

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

BILAL ADOM,

*Plaintiff-Appellant,*

*v.*

CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION*, et al.,*

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 22-cv-07150
Hon. Jeffery S. White

**RESPONDENT'S ANSWERING BRIEF**

James J. Zenere
Adam Stoddard
Zenere Cowden & Stoddard APC
2005 De La Cruz Blvd., Suite 240
Santa Clara, CA 95050
408-430-3551
astoddard@zcslawfirm.com
*Counsel for Defendant-Respondent*
*Scott Ladd, M.D.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 5

ISSUES PRESENTED ......................................................... 7

STATEMENT OF THE CASE ............................................. 7

I.     FACTUAL BACKGROUND ..................................... 7

II.    PROCEDURAL HISTORY ..................................... 10

STATEMENT OF THE ARGUMENT ............................. 12

STANDARD OF REVIEW ............................................... 12

ARGUMENT ..................................................................... 13

I.     MR. ADOM'S COMPLAINT WAS FOUND BY THE DISTRICT COURT TO STATE A SINGLE CLAIM AGAINST DR. LADD FOR DELIBERATE INDIFFERENCE IN DENYING HIM "INCONTINENCE SUPPLIES". CHRONIC PAIN WAS NEVER ALLEGED AS A SERIOUS MEDICAL NEED ................................................................. 13

II.    MR. ADOM CONCEDES THAT A SERIOUS MEDICAL NEED DID NOT EXIST ....................................... 14

III.   MR. ADOM FAILED TO ESTABLISH A TRIABLE ISSUE OF FACT, NAMELY, THAT DR. LADD WAS DELIBERATELY INDIFFERENT TO A SERIOUS MEDICAL NEED ................................................. 17

      i.    The Record Does Not Support the Conclusion that Mr. Adom's Incontinence was Medically Caused, or a Serious Medical Need Existed ..................................... 18

      ii.   There Is No Evidence That Dr. Ladd Was Deliberately Indifferent ................................................. 20

      iii.  The Fact That Another Doctor Subsequently Prescribed Incontinence Supplies Does Not Establish that Dr. Ladd Was Deliberately Indifferent ......................................... 23

CONCLUSION ................................................................. 25

CERTIFICATE OF COMPLIANCE ................................................ 26

CERTIFICATE OF SERVICE ......................................................... 27

STATEMENT OF RELATED CASES ............................................ 28

# TABLE OF AUTHORITIES

Cases:

*Adkins v. Morgan Cnty., Tennessee*, 798 App'x 858
(6th Cir. 2020) ................................................................. 17

*Allen v. Ornoski*, 435 F.3d 946 (9th Cir.2006)................................. 14

*Boyd v. Benton Cty.*, 374 F.3d 773 (9th Cir. 2004) ........................... 12

*Culver v. Bayola, MD.*, No. 18-12968-G, 2019 WL3247159, at *1
(11th Cir. Feb. 19, 2019) ................................................... 17

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987) .......... 7

*Estelle v. Gamble*, 429 U.S. 97 (1976) ................................. 14, 15, 22

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L. Ed. 2d 811
(1994).................................................................... 22

*GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381
(1997)..................................................................... 7

*Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) ............................ 22

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006)................................. 14

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir.2000)................................. 12

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992) ................... 14, 24

*Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir.2006) ............. 17

*Parrino v. FHP, Inc.*, 146 F.3d 699 (1998)........................................ 7

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192
(1993)...................................................................... 8

*Stewart v. Aranas*, 32 F.4th 1192 (9th Cir. 2022) ............................ 20

*Taylor v. Franklin Cty.*, 104 F.App'x 531 (6th Cir. 2004)............... 17

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ........................... 22

*Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990) ..................... 15

Statutes:

FRCP 10(c) ........................................................................... 7

# INTRODUCTION

Bilal Adom ("Appellant" or "Mr. Adom") is an incarcerated inmate who filed his Complaint against Scott Ladd, M.D. ("Respondent" or "Dr. Ladd"), among other defendants, and he asserted various causes of action. As it pertains to Dr. Ladd, the sole cause of action that survived judicial screening was a deliberate indifference to a purported serious medical need. Mr. Adom alleged that on December 7, 2021, Dr. Ladd evaluated him, he requested "incontinence protections"[1]; however, Dr. Ladd said that prisoners were malingering their incontinence conditions and their need for incontinence supplies, and thereby abusing the prison system which was costly. Mr. Adom further alleged that Dr. Ladd denied his request, but prescribed Oxybutynin[2]. Mr. Adom alleged that Dr. Ladd was acting under color of State law and was deliberately indifferent to his "serious medical condition".

Dr. Ladd took the deposition of Mr. Adom and thereafter filed a Motion for Summary Judgment ("MSJ") which was supported by admissible evidence, including pertinent excerpts from Mr. Adom's deposition transcript, Dr. Ladd's chart note from his sole patient encounter with Mr. Adom from December 7, 2021, and a signed affidavit/declaration from Dr. Ladd's medical expert, John Patrick Cello, M.D.

---

[1] The terms "incontinence protections" and "incontinence supplies" have been used interchangeably by the parties and the district court and have been understood throughout this case to mean adult diapers.

[2] Oxybutynin is used to treat symptoms of an overactive bladder, such as incontinence (loss of bladder control) or a frequent need to urinate.

In response to the MSJ, Mr. Adom repeatedly failed to file his opposition in a timely manner and when he ultimately did file his untimely Opposition, he failed to submit any admissible evidence, let alone evidence that would create a triable issue of fact.

The district court found that Mr. Adom's lack of "incontinence protections" did not constitute a "serious" medical condition under the Eighth Amendment. The district court further found that even if the lack of "incontinence protections" was a "serious" medical condition, there was no triable issue of fact that Dr. Ladd was deliberately indifferent to that condition. The district court granted the MSJ and entered judgment in favor of Dr. Ladd.

Mr. Adom appeals the district court's ruling, arguing that 1. The record does not support the conclusion that there was "no indication" that his incontinence was medically caused; 2. Dr. Ladd was aware of Mr. Adom's serious medical "symptoms" which required him to "take action"; and 3. The fact Mr. Adom received treatment for his incontinence from another provider does not defeat his claim that Dr. Ladd was deliberately indifferent.

The district court did not err in granting Dr. Ladd's MSJ as Mr. Adom claims. To the contrary, the district court fairly evaluated the evidence the parties submitted (or lack thereof from Mr. Adom) and came to the only rational conclusion, Mr. Adom was not suffering from a serious medical condition which required immediate attention, and more importantly, Dr. Ladd was not deliberately indifferent to a serious medical condition that did not exist. This Court should likewise deny Mr. Adom's appeal and uphold the district court's order granting the MSJ.

## ISSUES PRESENTED

I.     The district court did not err in determining the failure to provide Mr. Adom with "incontinence supplies", did not constitute a serious medical need.

II.    The district court did not err in determining Dr. Ladd's response to Mr. Adom's request for "incontinence supplies", was not deliberately indifferent to a serious medical need and a triable issue of fact did not exist.

## STATEMENT OF THE CASE

### I.     FACTUAL BACKGROUND

The medical records which Mr. Adom attached to the complaint dispute his allegations. (2-LaddSER-0267 - 3-LaddSER-00355) See *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint…These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.""). Furthermore, a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes. (FRCP 10(c))  Further, "[w]hen a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents," so the rationale for conversion to summary judgment—to allow the plaintiff an opportunity to respond in kind—"dissipates." *GFF Corp. v. Associated Wholesale Grocers*, (1997) 130 F.3d 1381, 1385; *see Parrino v. FHP, Inc.*, (1998) 146 F.3d 699, 706

Case: 24-4756, 02/27/2025, DktEntry: 26.1, Page 8 of 28

n.4 ("Where…an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff 'obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.'" (quoting *Pension Benefit Guar. Corp*. *v. White Consol. Indus.*, (1993) 998 F.2d 1192, 1196-97)). Moreover, the CDCR produced copies of Mr. Adom's medical records in this case which equally refute his allegations in the Complaint. (2-LaddSER-0199 – 2-LaddSER-0206)

On September 23, 2021, Mr. Adom was seen by a Licensed Vocational Nurse ("LVN") and it was explained to him that incontinence supplies could not be dispensed without an order from a primary care physician ("PCP") and the PCP had not ordered the supplies. (3-LaddSER-0337 – 3-LaddSER-0342; specifically, 3-LaddSER-0339, second paragraph)

On October 1, 2021, a Registered Nurse ("R.N.") documented that there was no corroborating data, information, or diagnosis that could be found to necessitate the need for incontinence supplies, which Mr. Adom's PCP had discussed with him. (3-LaddSER-0337 – 3-LaddSER-0342; specifically, 3-LaddSER-0339, third paragraph)

On December 7, 2021, Mr. Adom was seen by Dr. Ladd. (2-LaddSER-0201 – 2-LaddSER-0206) Dr. Ladd noted Mr. Adom's past medical history, including asthma, chronic pain syndrome, history of cerebrovascular accident, hypertension, hyperlipidemia and glaucoma. Incontinence was *not* identified as a past medical problem. Mr. Adom said he felt well and endorsed a few specific complaints. Dr. Ladd noted that the nursing staff brought it to his attention that Mr. Adom

8

was reporting chronic back pain. Mr. Adom was requesting a refill of his acetaminophen and ibuprofen. Given Mr. Adom's history of cerebrovascular accident, Dr. Ladd cautioned Mr. Adom not to overutilize ibuprofen, as it carried a cardiovascular risk. Dr. Ladd noted that Mr. Adom also used a wheelchair. Mr. Adom requested incontinence supplies be renewed for reported urinary incontinence; however, when asked, Mr. Adom denied any history of prostate surgery or radiation (2-LaddSER-0213 – 2-LaddSER-0214), nor a history of spinal stenosis. Dr. Ladd then explained that incontinence supplies had been abused in the prison system and he was not willing to prescribe them **at that time** without a clear indication. (2-LaddSER-0215) Dr. Ladd was willing to offer a trial of Oxybutynin for overactive bladder with urinary incontinence prior to providing incontinence supplies. (2-LaddSER-0216) The Problem List/Past Medical History included the following: Asthma, back pain, cataract, chronic pain syndrome, CVA, hyperlipidemia, hypertension, posterior vitreous detachment, primary open angle glaucoma of both eyes, and procedure refused. (2-LaddSER-0204 – 2-LaddSER-0206) Importantly, urinary incontinence was not identified.

On December 29, 2021, Mr. Adom was seen by another PCP who noted that Mr. Adom had discontinued the Oxybutynin due to his reported side effects. Mr. Adom's continued complaint of urinary incontinence was noted, which he reported only occurred at night. Mr. Adom denied any fecal incontinence or bowel-related concerns. The PCP noted concern for neurogenic bladder was not likely on account that his symptoms only occurred at night; and, a prostate examination was performed, noting possible benign hypertrophy. A plan of care

9

was noted to include a urinalysis, trial of Flomax (tamsulosin), and temporary orders for incontinence supplies, which would be re-evaluated in six months. (3-LaddSER-0324 – 3-LaddSER-0326)

On March 7, 2022, Mr. Adom was seen by another PCP, at which time he reported side effects and no symptom improvement with tamsulosin; therefore, the medication was discontinued. Mr. Adom was advised that a recent prostate-specific antigen (PSA) study was within normal limits, and no further changes to his plan of care related to urinary incontinence was noted. (3-LaddSER-0324 – 3-LaddSER-0326)

## II. PROCEDURAL HISTORY

On November 15, 2022, Mr. Adom filed his Complaint against Dr. Ladd, among others. Mr. Adom attached various grievances, responses to grievances, and medical records. (2-LaddSER-0267 – 3-LaddSER-0355)

On March 1, 2023, the district court entered its screening order finding that the only viable cause of action against Dr. Ladd was under the Eighth Amendment for deliberate indifference to a serious medical need. (2-LaddSER-0261 – 2-LaddSER-0265)

On June 14, 2023, Dr. Ladd took the deposition of Mr. Adom. (2-LaddSER-0199 – 2-LaddSER-0223; 2-LaddSER-0207 – 2-LaddSER-0223)

Mr. Adom conducted no discovery as it relates to Dr. Ladd.

On August 17, 2023, the district court ordered that dispositive motions were due on or before September 27, 2023, and any Opposition

was due on or before October 24, 2023. (2-LaddSER-0259 – 2-LaddSER-0260)

On September 27, 2023, Dr. Ladd filed his MSJ. (2-LaddSER-0188 – 2-LaddSER-0258)

On October 26, 2023, two days after Mr. Adom's Opposition was due, he filed an <u>untimely</u> Motion for Extension of Time to serve his Opposition. (2-LaddSER-0185 – 2-LaddSER-0187)

On October 30, 2023, the district court granted Mr. Adom's untimely Motion for Extension of Time, permitting him to file his Opposition on or before December 13, 2023. (2-LaddSER-0184)

On December 14, 2023, one day after Mr. Adom's Opposition was due, he filed another <u>untimely</u> Motion for Expansion of Time to serve his Opposition. (2-LaddSER-0176 – 2-LaddSER-0183)

On December 18, 2023, the district court granted Mr. Adom's second untimely Motion for Expansion of Time, permitting him to file his Opposition on or before January 29, 2024. (2-LaddSER-0175) <u>Mr. Adom failed to timely file his Opposition by this new deadline.</u>

On February 6, 2024, Mr. Adom filed his <u>untimely</u> Opposition to Dr. Ladd's MSJ. (2-LaddSER-0030 – 2-LaddSER-0174)

On February 12, 2024, Dr. Ladd filed his Reply to Mr. Adom's untimely Opposition to Dr. Ladd's MSJ. (2-LaddSER-0016 – 2-LaddSER-0029)

On June 25, 2024, the district court issued its order granting Dr. Ladd's MSJ. (1-LaddSER-0006 – 1-LaddSER-0014)

On June 25, 2024, the district court filed the Judgment in favor of Dr. Ladd. (1-LaddSER-0005)

On July 22, 2024, Mr. Adom filed a Motion for Leave to File "Notice of Appeal" to Ninth Circuit Court of Appeals. (1-LaddSER-003 – 1-LaddSER-0004)

On August 28, 2024, the district court denied Mr. Adom's motion as unnecessary but construed the motion as a notice of appeal. (1-LaddSER-0002)

## STATEMENT OF THE ARGUMENT

1. The district court correctly determined that Mr. Adom was not suffering from a serious medical need. Mr. Adom's claim of incontinence and demand for incontinence supplies, does not equate to a serious medical need, the failure of which to treat, could result in significant injury or unnecessary and wanton infliction of pain; and

2. Mr. Adom failed to raise a triable issue of fact that Dr. Ladd was deliberately indifferent to a serious medical need.

## STANDARD OF REVIEW

This court must review a grant of summary judgment de novo. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000). Reviewing the evidence in the light most favorable to the nonmoving party, this Court must determine whether there are any genuine issues of material fact. *Id.* "Whether a plaintiff's federal rights were clearly established at the time of the alleged violation is also a question of law reviewed de novo." *Boyd v. Benton Cty.,* 374 F.3d 773, 778 (9th Cir. 2004)

## ARGUMENT

The district court did not err in granting Dr. Ladd's MSJ. The district court correctly determined that Mr. Adom failed to show a serious medical need by demonstrating that failure to treat his demand for "incontinence supplies" could result in further significant injury or the unnecessary and wanton infliction of pain. The district court also correctly found that Mr. Adom failed to show that Dr. Ladd was deliberately indifferent to a serious medical need, partly because a serious medical need did not exist, and because Dr. Ladd did take action in response to Mr. Adom's complaints, specifically by prescribing Oxybutynin to treat the reported incontinence. This Court must uphold the district court's order granting Dr. Ladd's MSJ.

**I.    MR. ADOM'S COMPLAINT WAS FOUND BY THE DISTRICT COURT TO STATE A SINGLE CLAIM AGAINST DR. LADD FOR DELIBERATE INDIFFERENCE IN DENYING HIM "INCONTINENCE SUPPLIES". CHRONIC PAIN WAS NEVER ALLEGED AS A SERIOUS MEDICAL NEED.**

Mr. Adom's opening brief includes a new argument that his "serious medical condition" was not only the lack of being provided "incontinence supplies", but also failure to address "chronic pain." The problem is "chronic pain" is not part of his Complaint nor was it ever raised by Mr. Adom in his Opposition to the MSJ. The entirety of the Complaint deals with, discusses, and addresses, Mr. Adom's claim that he was prescribed "incontinence supplies", that they were discontinued at some point, that he requested they be resumed, but that request was denied. At no point in Mr. Adom's Complaint does he allege that he

13

was suffering from "chronic pain", that he complained to Dr. Ladd of "chronic pain", or that Dr. Ladd was deliberately indifferent to purported complaints of "chronic pain."

A party normally may not press an argument on appeal that it failed to raise in the district court. *Allen v. Ornoski,* 435 F.3d 946, 960 (9th Cir.2006) ("A party cannot treat the district court as a mere ill-placed bunker to be circumvented on his way to this court where he will actually engage his opponents.") Therefore, it is requested that this Court disregard Mr. Adom's attempts to turn this appeal into something that it is not and raise new arguments for the first time here. The sole issue on appeal, at least as it relates to Dr. Ladd, is whether a serious medical need existed when Mr. Adom requested "incontinence supplies" and whether Dr. Ladd's response to that complaint was deliberately indifferent. The answer to both questions is in the negative.

## II. MR. ADOM CONCEDES THAT A SERIOUS MEDICAL NEED DID NOT EXIST.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a prisoner-plaintiff must show a "serious medical need," and that the defendants' "response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith,* 974 F.2d 1050,

14

1059 (citing *Estelle*, 429 U.S. at 104). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a serious need for medical treatment. *Id.* at 1059-60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Mr. Adom alleged in the Complaint that Dr. Ladd was deliberately indifferent to him because Dr. Ladd did not accede to Mr. Adom's request for "incontinence supplies". As discussed above, Dr. Ladd evaluated Mr. Adom, questioned him regarding his past medical history, confirmed that Mr. Adom did not have a history of prostate surgery or radiation, or history of spinal stenosis. Dr. Ladd then explained to Mr. Adom that incontinence supplies were being abused in the prison system and Dr. Ladd was not willing to prescribe them *at that time* without a clear indication. Mr. Adom even agreed at deposition that a doctor would need to have some medical history, objective data, or indication before prescribing "incontinence supplies." (2-LaddSER-0212) Dr. Ladd then prescribed Mr. Adom Oxybutynin for overactive bladder with urinary incontinence and indicated "Will trial oxybutynin prior to providing incontinence supplies". (2-LaddSER-0224) Thus, Dr. Ladd was not deliberately indifferent to a serious medical need of Mr. Adom, (2-LaddSER-0224 – 2-LaddSER-0254, specifically 2-LaddSER-0226, paragraph 1.) but rather assessed his condition and based on his medical experience,

training and education, prescribed a medication that could be used to treat the reported incontinence.

Mr. Adom's opening brief concedes that he was not suffering from a "serious medical need". Mr. Adom states that he was seeking an *accommodation*, adult diapers, to clean up the mess left behind due to incontinence episodes. Mr. Adom states:

> "..the accommodation he seeks, adult diapers, in no way treats his incontinence. Mr. Adom continues to involuntarily evacuate urine and occasionally stool whether he wears an adult diaper or not. The diaper simply allows him to relieve himself without making a mess and without humiliation." (Appellant's Brief, page 36)

Mr. Adom has essentially proven Dr. Ladd's point. A "serious medical need" did not exist for which "incontinence supplies" was the solution. At best, Mr. Adom was suffering from incontinence and the remedy was not to treat the aftereffects (adult diapers to prevent or clean up a mess), but rather to determine what was the underlying issue that was causing the incontinence in the first place. To make that determination, a medical professional would need to evaluate the patient, take a history, order tests, and prescribe medication, if warranted. Here, Oxybutynin was prescribed to treat the underlying issue. Stated differently, wanting "incontinence supplies" was not a "serious medical need", but rather an accommodation to clean up a mess after the fact.

Therefore, even if Mr. Adom was suffering from incontinence, the failure of Dr. Ladd to prescribe him adult diapers was not deliberately indifferent because an adult diaper "in no way treats his

16

incontinence." Mr. Adom has sued Dr. Ladd for being deliberately indifferent by failing to prescribe adult diapers. Mr. Adom has *NOT* sued Dr. Ladd for ignoring his complaints that he was experiencing incontinence. Even if Mr. Adom did allege that Dr. Ladd ignored his complaints of incontinence, the evidence is to the contrary. At no time did Dr. Ladd ignore Mr. Adom's complaints, nor do his complaints demonstrate a serious medical need.

Mr. Adom cites to *Adkins v. Morgan Cnty., Tennessee*, 798 App'x 858 (6th Cir. 2020); *Culver v. Bayola*, MD., No. 18-12968-G, 2019 WL3247159, at *1 (11th Cir. Feb. 19, 2019); and *Taylor v. Franklin Cty.,* 104 F.App'x 531 (6th Cir. 2004) (Appellant's Brief, page 40), for the proposition that "incontinence" can constitute a serious medical need. The problem is, none of these cases are from the Ninth Circuit and are therefore not controlling. A decision from a sister court, is not "intervening higher authority" and does not authorize this Court to abandon a prior panel opinion. *Ortega-Mendez v. Gonzales,* 450 F.3d 1010, 1019 (9th Cir.2006) (noting that intervening higher authority includes decisions of the Supreme Court and of this court sitting en banc). Moreover, *Culver* is not even a published opinion.

### III.    MR. ADOM FAILED TO ESTABLISH A TRIABLE ISSUE OF FACT, NAMELY, THAT DR. LADD WAS DELIBERATELY INDIFFERENT TO A SERIOUS MEDICAL NEED.

Mr. Adom devotes three pages at the very end of his Opening brief to address this issue. (Appellant's Brief, page 46-49) He argues the following: 1. The record supports the conclusion that his incontinence was medically caused; 2. Dr. Ladd was aware of Mr.

Adom's serious medical symptoms which required him to "take action"; and 3. The fact that Mr. Adom received "treatment for his incontinence" from another doctor does not prevent Dr. Ladd from being found deliberately indifferent. There is no merit to any of these arguments.

       i.     The Record Does Not Support the Conclusion that Mr. Adom's Incontinence was Medically Caused, or a Serious Medical Need Existed.

Mr. Adom's Opening brief incorrectly states that, "…the record does not support the conclusion that there was 'no indication' that Mr. Adom's incontinence was medically caused." (Appellant's Brief, page 46) First, that is not what the district court said. The district court said that Mr. Adom was examined multiple times by medical professionals "by a nurse on October 1, 2021, by Defendant Dr. Ladd on December 7, 2021, and by Defendant Dr. Loterzstain on December 29, 2021" and that all of these medical professionals found "no indication his incontinence had a medical cause or he had a medical need for incontinence supplies." (1-LaddSER-0009; 4:3-8) The district court also credited Dr. Ladd's expert witnesses' evaluation which concluded there was no indication Mr. Adom's incontinence was caused by a medical condition, or he had a medical need for incontinence supplies.

The issue here is not whether Mr. Adom's incontinence was medically caused or not. The issue is whether a "serious medical need" existed for the prescription of "incontinence supplies". The uncontroverted evidence in this case confirms that Mr. Adom was seen by Dr. Ladd on December 7, 2021, that Dr. Ladd took a history from Mr. Adom which was not consistent with incontinence, that Mr. Adom

said he felt well and endorsed few specific complaints, but that Dr. Ladd agreed to prescribe Oxybutynin for overactive bladder with urinary incontinence to treat the underlying condition. Dr. Ladd's order states, "Will trial oxybutynin prior to providing incontinence supplies." (2-LaddSER-0206)

The purpose of the Oxybutynin was therefore in direct response to Mr. Adom's complaints of incontinence. If the Oxybutynin was taken by Mr. Adom and it resolved his incontinence, then obviously "incontinence supplies" would not be needed since Mr. Adom would no longer be urinating on himself. Despite that, there is no evidence in the record that Mr. Adom was urinating on himself, nor is there evidence in the record that if he was urinating on himself, that said incontinence was medically caused. The conclusion therefore follows that "incontinence supplies" was not a "serious medical need".

To the extent that Mr. Adom is now claiming for the first time on appeal that Dr. Ladd was deliberately indifferent to his complaints of back pain, there is no evidence to support that either. In this regard, although Mr. Adom did endorse chronic back pain, in response, Dr. Ladd cautioned him not to overutilize ibuprofen, encouraged him to stretch and perform a home exercise program, and placed an order for acetaminophen (pain relief) and ibuprofen (anti-inflammatory). (2-LaddSER-0205) Although chronic back pain can hardly be described as a "serious medical condition", Dr. Ladd clearly was not deliberately indifferent to it, and prescribed medications, and encouraged a stretching regimen in direct response to his complaints.

   ii.  There Is No Evidence That Dr. Ladd Was Deliberately Indifferent.

  Mr. Adom attempts to argue that Dr. Ladd was aware of "serious medical symptoms" which were sufficient to place Dr. Ladd on notice that he needed to "take action". (Appellant's Brief, page 47) The problem with this argument is that it is belied by the fact that, even if Mr. Adom's demand for "incontinence supplies" could be construed as a "serious medical need" (and not just a "serious medical symptom"), Dr. Ladd *did* take affirmative action to address his complaints.

  Mr. Adom cites to *Stewart v. Aranas,* 32 F.4th 1192, 1194 (9th Cir. 2022) for the proposition that a prison doctor was found to be deliberately indifferent when they failed to investigate and treat the plaintiff's difficulty urinating and abdominal pain and kidney pain, even though he was not diagnosed with an underlying prostate condition until transferred to a different prison years later. (Appellant's Brief, page 48) The problem with *Stewart* is that there are no similar facts in this case to support such a finding.

  Namely, Dr. Ladd *did* investigate Mr. Adom's claims, and he specifically *treated* Mr. Adom by ordering a trial of Oxybutynin to see whether it would resolve the reported incontinence, and if that did not work, Dr. Ladd would consider providing "incontinence supplies". Thus, Dr. Ladd specifically addressed Mr. Adom's concerns by performing an examination, obtaining an appropriate oral history, and then prescribing medication to treat the underlying issue. (2-LaddSER-0224 – 2-LaddSER-0227)

This is not a situation where Mr. Adom showed up for a medical evaluation, made several complaints, and then the medical professional simply ignored those complaints. In that scenario, a medical professional may very well be acting deliberately indifferent to a serious medical need, assuming one was present. This is the exact opposite of that. Dr. Ladd appropriately responded to Mr. Adom's complaints and prescribed medication to treat the underlying etiology of those complaints. Even Mr. Adom agreed that Dr. Ladd prescribed a medication to address the incontinence issues he had been experiencing. (2-LaddSER-0211; 119:8-11)

The fact that Mr. Adom disagreed with Dr. Ladd's medical decision making and plan to prescribe Oxybutynin, does not lead to the conclusion that Dr. Ladd was deliberately indifferent. The fact that Mr. Adom requested incontinence supplies to clean up incontinence accidents after they happened but was instead prescribed a medication to prevent incontinence episodes before they occurred, does not establish a claim of deliberate indifference. To the extent that Mr. Adom argues this was "sub-standard" care (2-LaddSER-0293, paragraph 68) ["On December 7th, 2021, defendant Ladd deployed Implied Racial Bias and sub-standard medical care when Adom requested much needed incontinence protections."] or Dr. Ladd did not "effectively treat Mr. Adom's incontinence" (Appellant's Brief, page 41) ["Combined, the failure to effectively treat Mr. Adom's incontinence…"], a difference of medical opinion cannot support a deliberate indifference claim.

A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994). "A showing of medical malpractice or even gross negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Toguchi*, 391 F. 3d 1051, 1058. The Eighth Amendment is not a vehicle for bringing medical malpractice claims, and not every lapse in a prisoner's medical care will rise to the level of a constitutional violation. *Estelle v. Gamble*, (1976) 429 U.S. 97, 105-06. "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Id.* at 105.

Dr. Ladd did not deprive Mr. Adom of the "minimal civilized measure of life's necessities." Mr. Adom requested "incontinence supplies", but there was no medically indicated reason for said supplies, and instead Dr. Ladd prescribed medication to address Mr. Adom's alleged incontinent issues. (2-LaddSER-0224 – 2-LaddSER-0227, specifically 2-LaddSER-0224, paragraph 6) There certainly is

no evidence that Dr. Ladd acted with deliberate indifference toward Mr. Adom.

Mr. Adom cites to *Lolli v. Cnty. Of Orange,* 351 F.3d 410 for the proposition that a plaintiff may rely on "circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." (Appellant's Brief, page 42) The problem with this argument is that there is absolutely no circumstantial evidence, let alone direct evidence, from which the district court, or this Court, could conclude that Dr. Ladd actually knew of a risk of harm, and deliberately ignored it. The direct evidence in the case is that Dr. Ladd considered Mr. Adom's complaints, he asked questions to obtain an appropriate medical history, came up with a plan to address those complaints, and then prescribed a medication to treat the complaints. Therefore, any insinuation by Mr. Adom that based on "circumstantial evidence", Dr. Ladd actually knew of a risk of harm and disregarded it, lacks any indicia of truth.

    iii.    The Fact That Another Doctor Subsequently Prescribed Incontinence Supplies Does Not Establish that Dr. Ladd Was Deliberately Indifferent.

Mr. Adom was not provided "incontinence supplies" between September 2021 to January 2022. During that time, Mr. Adom suffered no injury or damage. (2-LaddSER-0219 – 2-LaddSER-0222; 143:16-21; 144:1-7; 144:16-145:8; 145:17-146:2) The fact that Mr. Adom received "incontinence supplies" after a trial of Oxybutynin, does not indicate that Dr. Ladd was deliberately indifferent in December of 2021.

Dr. Ladd's expert, John Patrick Cello, M.D., confirms that Dr. Ladd's care and treatment of Mr. Adom complied with the standard of care. (2-LaddSER-0129 – 2-LaddSER-0132). Dr. Cello's opinion was that Dr. Ladd's evaluation of Mr. Adom on December 7, 2021, complied with the standard of care. (2-LaddSER-0129 – 2-LaddSER-0132) Dr. Cello confirms that nothing Dr. Ladd did or did not do caused any injury to Mr. Adom. (2-LaddSER-0224 – 2-LaddSER-0227) Mr. Adom himself confirmed that he never experienced any injury as a result of not receiving "incontinence supplies". (2-LaddSER-0224 – 2-LaddSER-0227) Mr. Adom literally testified that he did not sustain any "physical injuries that was directly related to the urine itself. No." Mr. Adom confirmed that he did not sustain any "physical injuries from the urine itself." (2-LaddSER-0219 – 2-LaddSER-0222; 143:16-21; 144:1-7; 144:16-145:8; 145:17-146:2)

Mr. Adom's citation to *McGuckin v. Smith,* 974 F.2d 1050 is misplaced. Mr. Adom takes a single snippet from *McGuckin* to argue that Dr. Ladd "sat idly" by and allowed Mr. Adom to suffer through "untreated incontinence" for nearly five months. This could not be further from the truth. Dr. Ladd treated Mr. Adom's complaints of incontinence by prescribing Oxybutynin, as opposed to ignoring those complaints, and simply giving him adult diapers to deal with the mess after he was incontinent. Mr. Adom had already gone over 2 months without having "incontinence supplies" by the time he was examined by Dr. Ladd. Dr. Ladd can hardly be said to have "sat idly" by and acted with deliberate indifference. The fact that Mr. Adom was later prescribed adult diapers does not demonstrate deliberate indifference

24

by Dr. Ladd. That simply demonstrates that a later provider agreed with Dr. Ladd's plan, namely, prescribe Oxybutynin but if that does not resolve the incontinence, then to prescribe adult diapers. A difference of medical opinion cannot support a deliberate indifference claim.

## CONCLUSION

For the foregoing reasons, this Court should deny Mr. Adom's appeal and uphold the district court's grant of summary judgment for Dr. Ladd.

Respectfully Submitted,


/s/Adam M. Stoddard
James J. Zenere
Adam Stoddard
Zenere Cowden & Stoddard APC
2005 De La Cruz Blvd., Suite 240
Santa Clara, CA 95050
408-430-3551
astoddard@zcslawfirm.com
*Counsel for Defendant-Respondent Scott Ladd, M.D.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,973 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I further certify that his brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: February 27, 2025

>     /s/Adam M. Stoddard
> James J. Zenere
> Adam Stoddard
> Zenere Cowden & Stoddard APC
> 2005 De La Cruz Blvd., Suite 240
> Santa Clara, CA 95050
> 408-430-3551
> astoddard@zcslawfirm.com
> *Counsel for Defendant-Respondent Scott Ladd, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: February 27, 2025

> /s/Adam M. Stoddard
> James J. Zenere
> Adam Stoddard
> Zenere Cowden & Stoddard APC
> 2005 De La Cruz Blvd., Suite 240
> Santa Clara, CA 95050
> 408-430-3551
> astoddard@zcslawfirm.com
> *Counsel for Defendant-Respondent*
> *Scott Ladd, M.D.*

# STATEMENT OF RELATED CASES

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number(s): 24-4756**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** _____/s/Adam M. Stoddard_____     **Date:** <u>February 27 ,2025</u>